IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| | ) | JURY TRIAL DEMAND |
| v. | ) ) | COMPLAINT |
| HOSPITAL HOUSEKEEPING SYSTEMS, LLC | ) ) ) | |
| Defendant. | ) | |

NATURE OF THE ACTION

This is an action pursuant to Title I of the Americans with Disabilities Act of 1990 (ADA), as amended by the ADA Amendments Act of 2008, and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Jeffery Springfield, a qualified individual with a disability. As alleged with greater particularity below, Plaintiff Equal Employment Opportunity Commission alleges Defendant Hospital Housekeeping Systems, LLC discharged Mr. Springfield because of his disability, blindness, in violation of 42 U.S.C. § 12112(a).

JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of Tennessee, Nashville Division.

3. Plaintiff Equal Employment Opportunity Commission (the Commission) is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII.

4. Defendant Hospital Housekeeping Systems, LLC (HHS) is a limited liability company, headquartered in Texas, doing business in the State of Tennessee and the City of Lebanon, and has continuously employed at least 15 employees.

5. At all relevant times, HHS has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. § 12111(5) and (7).

6. At all relevant times, HHS has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

ADMINISTRATIVE PROCEDURES

7. More than thirty days prior to the institution of this lawsuit, Jefferey Springfield filed a charge with the Commission alleging violations of the ADA.

8. On July 10, 2024, the Commission issued to HHS a Letter of Determination finding reasonable cause to believe HHS violated the ADA and invited HHS to join the Commission in informal methods of conciliation to endeavor to eliminate unlawful employment practices and provide appropriate relief.

2

9. The Commission engaged in communications with HHS to provide HHS the opportunity to remedy the discrimination described in the Letter of Determination.

10. The Commission was unable to secure from HHS a conciliation agreement acceptable to the Commission.

11. On July 31, 2024, the Commission issued to HHS a Notice of Failure of Conciliation notifying HHS the Commission was unable to secure a conciliation agreement acceptable to the Commission.

12. All conditions precedent to the institution of this lawsuit have been fulfilled.

STATEMENT OF CLAIMS

13. On or around August 26, 2022, HHS engaged in unlawful employment practices in Lebanon Tennessee in violation of Section 102(a) of Title I of the ADA, 42 U.S.C. §§ 12112(a).

14. The unlawful employment practices include HHS unlawfully discharging Jeffery Springfield on the basis of his disability, blindness.

15. Mr. Springfield has been blind since birth, an impairment which substantially limits his ability to see, read, and perform activities of daily living.

16. Mr. Springfield's blindness is obvious, as he uses a cane to safely walk and avoid obstacles.

17. In addition to blindness, Mr. Springfield also suffers from intellectual and developmental disabilities, which substantially limits brain function and further affect his ability to learn and communicate in traditional methods, including using Braille.

18. As a result of Mr. Springfield's blindness and intellectual and developmental disabilities, Mr. Springfield can neither read nor write.

3

19. After graduating from the Tennessee School for the Blind, Mr. Springfield participated in Project SEARCH, an unpaid internship program designed for individuals with intellectual and developmental disabilities.

20. In August 2019, Project SEARCH placed Mr. Springfield in an unpaid internship at Vanderbilt University Medical Center, where he worked as a Dining Room Attendant and Sneeze Station Technician.

21. As a Dining Room Attendant, Mr. Springfield cleaned tables and chairs and removed trash from tables.

22. As a Sneeze Station Technician, Mr. Springfield maintained "sneeze stations" by stocking the soap and sanitizer dispensers throughout the hospital.

23. On or around May 10, 2021, Mr. Springfield, with assistance from Project SEARCH, applied for employment with HHS at Vanderbilt University Wilson County Hospital (VUWCH).

24. HHS was fully aware of Mr. Springfield's blindness and intellectual disability through his application materials, preemployment forms, and medical disclosures.

25. Mr. Springfield's application and résumé for employment with HHS disclosed his graduation from Tennessee School for the Blind and his previous internship experience with Project SEARCH.

26. Mr. Springfield's HHS Medical History Questionnaire contains a response of "yes" to the question of whether he has a "mental retardation/learning disability," and it includes a handwritten response of "Blindness" for eye/vision conditions.

27. Mr. Springfield's Post-Offer Questionnaire contains a handwritten notation of "Blindness."

4

28. Mr. Springfield's Respirator Medical Evaluation form contains a handwritten notation stating, "I am blind. I require text-speech application of material read to me."

29. HHS requires new hires to pass an Essential Functions Test (EFT), which is designed to ensure team members can meet the essential functions of their job and objectively determine team members' physical capabilities.

30. On May 14, 2021, Mr. Springfield passed the EFT with a perfect score and HHS hired him as a Police Tech/Non-Patient Room Cleaner (Police Tech).

31. As a Police Tech, HHS expected Mr. Springfield to refill "sneezing stations," replacing soap and sanitizer in dispensers throughout VUWCH.

32. Mr. Springfield worked for HHS with the assistance of a Job Coach, assigned by Project SEARCH.

33. The Job Coach remained with Mr. Springfield for his first 90 days of employment with HHS. After the initial 90 days, the Job Coach periodically observed Mr. Springfield and HHS could contact the Job Coach as needed.

34. Throughout his employment, Mr. Springfield never requested additional accommodations beyond the Job Coach assigned to him through Project SEARCH.

35. Mr. Springfield worked for HHS for over a year without incident.

36. Mr. Springfield is a qualified individual with a disability.

37. On August 24, 2022, Mr. Springfield experienced a non-injury fall while at work, in which he caught his foot on a door and landed on his elbows.

38. Mr. Springfield did not require medical attention and was not in pain.

5

39. Director for VUWCH, Julius Grant, drafted reports related to the fall, none of which suggest the incident was grounds for termination or raises concerns regarding Mr. Springfield's continued ability to perform his job.

40. Mr. Grant drafted a Statement of the Incident, reporting Mr. Springfield fell and landed on his elbows and a supervisor took Mr. Springfield to the hospital's emergency room.

41. Mr. Grant also reported Mr. Springfield initially described his pain as "1" on a scale of 1 to 10 and later described it as "0," and 20-30 minutes later Mr. Springfield again explained he felt no pain.

42. Mr. Grant arrived in the emergency room and took Mr. Springfield to the break room instead. Mr. Grant told Mr. Springfield to remain in the break room for the rest of his shift, approximately two hours.

43. Mr. Grant also drafted a Workers Compensation Report attesting Mr. Springfield did not miss work due to the incident and listing his post-incident status as "Full Productive Duty."

44. HHS did not contact Mr. Springfield's mother or his Job Coach to inform them about his non-injury fall.

45. On August 25 and 26, 2022, Mr. Springfield worked his entire shift and fulfilled his job duties without incident.

46. On August 25, 2022, Mr. Springfield's Job Coach visited the worksite, at which point HHS disclosed Mr. Springfield's non-injury fall.

47. On August 26, 2022, after Mr. Springfield worked his entire shift without incident, HHS terminated his employment.

6

48. HHS provided Mr. Springfield, who cannot read, a team counseling memo as a notice of separation, citing safety concerns and an alleged inability to perform the essential functions of the job.

49. HHS wrote, "[b]ased on Jeff's safety and the safety of others. (sic) HHS does not have a position available with accommodation that would allow him to still complete his tasks safely.

50. HHS's EFT Policy requires team members returning from a work or nonwork related injury to pass the EFT before returning to work.

51. HHS never reassessed Mr. Springfield's ability to perform his job duties.

52. HHS did not administer another EFT to Mr. Springfield as required by its policy.

53. Mr. Springfield satisfactorily performed his job duties as an HHS employee.

54. Mr. Springfield's Job Coach never reported an issue with Mr. Springfield.

55. HHS never reported any concerns with Mr. Springfield's performance to Mr. Springfield, his Job Coach, or his mother.

56. HHS never issued any disciplinary actions to Mr. Springfield.

57. HHS discharged Mr. Springfield because of his disability, despite his ability to perform the essential functions of his job with the Job Coach accommodation.

58. The effect of the practices complained of in the paragraphs above have been to deprive Mr. Springfield of equal employment opportunities and otherwise adversely affect his status as an employee because of his disability.

59. The unlawful employment practices complained of in the paragraphs above were intentional.

60. The unlawful employment practices complained of in the paragraphs above were done with malice or with reckless indifference to the federally protected rights of Mr. Springfield.

PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests this Court:

A. Grant a permanent injunction enjoining HHS, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discharging an employee because of disability.

B. Order HHS to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

C. Order HHS to make whole Jeffery Springfield by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to rightful place hiring or reinstatement of Jeffery Springfield, or an award of front pay.

D. Order HHS to make whole Jeffery Springfield by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above in amounts to be determined at trial.

E. Order HHS to make whole Jeffery Springfield by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practices described above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F. Order HHS to pay Jeffery Springfield punitive damages for its malicious and reckless conduct in amounts to be determined at trial.

G.      Award the Commission its costs of this action.

H.      Grant such further relief as the Court deems necessary and proper in the public interest.

<u>JURY TRIAL DEMAND</u>

The Commission requests a jury trial on all questions of fact raised by its complaint.

KARLA GILBRIDE
General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

FAYE A. WILLIAMS
Regional Attorney
TN Bar No. 011730
faye.williams@eeoc.gov

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Memphis District Office
200 Jefferson Avenue, Suite 1400
Memphis, TN 38103
(901) 685-4609

GARY SULLIVAN
Assistant Regional Attorney
AR Bar No. 92051
gary.sullivan@eeoc.gov

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Little Rock Area Office
820 Louisiana Street, Suite 200
Little Rock, AR 72201
(501) 900-6140

<u>/s/ Raquel A. Cato</u>
RAQUEL A. CATO
Trial Attorney
TN Bar No. 040675
raquel.cato@eeoc.gov

9

MARCERIOUS D. KNOX
Trial Attorney
TN Bar No. 036851
marcerious.knox@eeoc.gov

EQUAL EMPLOYMENT
OPPORUTNITY COMMISSION
Nashville Area Office
220 Athens Way, Suite 350
Nashville, TN 37228
(615) 736-5784

10